UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| KEITH WESTENGARD,                         )<br>                                           )<br>             Plaintiff,                   )<br>                                           )         3:10-cv-00466-RCJ-WGC<br>      vs.                                  )<br>                                           )<br>PETER ANDERSON et al.,                     )         **ORDER**<br>                                           )<br>             Defendants.                  )<br>_____) | |

This case arises out of an alleged hostile work environment. Defendants have moved for summary judgment. For the reasons given herein, the Court denies the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Keith Westergard is a Battalion Chief with the Nevada Division of Forestry ("NDF"). (Am. Compl. ¶ 2, Nov. 16, 2010, ECF No. 13). Defendants are Plaintiffs supervisors and coworkers. (*See id.* ¶¶ 5–11). At some point, Plaintiff became aware that a supervisor was "interfering with operations of the agency in Elko with his affairs with two dispatchers and one ambulance attendant," another supervisor's allegedly poor management style, and illegal activity with respect to grant monies. (*See id.* ¶ 14). Plaintiff characterizes these as issues of public concern. (*See id.* ¶ 13). Plaintiff complained of these issues to Defendants, who are his supervisors and coworkers. (*Id.* ¶ 14). He also facilitated a meeting between an Elko County Commissioner and some NDF employees concerning the alleged adverse effects of poor administration upon operations. (*See id.*). In retaliation for his complaints, Defendants created a hostile working environment for Plaintiff, including: Defendant Holly Bullington, a dispatcher,

failing to respond to Plaintiff's calls; Bullington's defamation of Plaintiff within and without the agency; the receipt of a negative performance evaluation from an unidentified person, as well as the initiation of an investigation against him for unspecified reasons; and Plaintiff's termination. (*See id.* ¶ 15).[1]  Plaintiff was also placed on administrative leave during wildfire season, resulting in an inability to seek overtime hours. (*See id.*).  Defendant Richard Harvey has allegedly admitted that the reason behind these adverse employment actions is to keep Plaintiff quiet concerning his complaints so that NDF does not lose its contract with Elko County. (*See id.* ¶ 16).  Plaintiff's damages consist of emotional distress and lost wages and benefits. (*Id.* ¶ 17).

Plaintiff sued Defendants in this court on a single cause of action for First Amendment retaliation pursuant to 42 U.S.C. § 1983.  No Defendant moved to dismiss.  Defendants have moved for summary judgment.

## II.   LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at

---

[1] This allegation is confusing.  It is the only place in the Amended Complaint ("AC") where Plaintiff alleges having been terminated.  In paragraph 2 of the AC, Plaintiff affirmatively alleges that he is still employed as a Battalion Chief.  Later in the AC, he notes that he will seek to amend the AC "in the event he chooses to resign." (*See id.* ¶ 18).  Defendants' motion clarifies that Plaintiff was terminated but was later reinstated by a State Personnel Commission Hearing Officer.

trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

1 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are
2 to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely
3 colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). There is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Natural persons sued in their individual capacities (as all Defendants have been sued in this case) may have qualified immunity against claims of constitutional violations. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). An official is not entitled to qualified immunity if: (1) there has been a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendant's position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court has discretion to analyze the second prong first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A "clearly established" right for the purpose of qualified immunity is one that has been announced by the Supreme Court or an applicable Court of Appeals, i.e., binding authority. *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

In order to find a state actor liable for a First Amendment retaliation claim, a plaintiff must show that the actor "by his actions . . . deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the officer's] conduct . . . ." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994)). "The defendant's intent *is* an element of the claim." *Mendocino*, 14 F.3d at 464. If no chilling occurred, or if a person of "ordinary firmness"

would not have been silenced from future speech, there is no retaliation claim. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Internal grievances by public employees generally do not implicate the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The Ninth Circuit has decided a case similar to the present one. *See Desrochers v. City of San Bernardino*, 572 F.3d 703 (9th Cir. 2009). In *Desrochers*, four sergeants of the San Bernardino Police Department ("SBPD") filed an informal grievance about their supervisor, a Lieutenant. *See id.* at 705. When the Lieutenant found out about the grievance, he requested a transfer, which was granted, and the aggrieved sergeants had little to no contact with the Lieutenant thereafter. *Id.* at 706. Two of the sergeants resolved their grievance, but Sergeants Desrochers and Lowes went on to file a formal grievance against the Lieutenant, the Chief of Police, and the Captain who had adjudicated the informal grievance. *Id.* The formal grievance, which was supported by declarations describing several incidents, essentially alleged that the Lieutenant was a bully who had created a "hostile work environment" and that neither the Captain nor the Chief of Police had taken appropriate steps to remedy the situation. *See id.* at 706–07. The Captain denied the formal grievance. *Id.* at 707. Desrochers and Lowes then filed a complaint with the City's Human Resources Department ("HR") against the Lieutenant, his replacement, the Captain, and the Chief of Police. *Id.* at 708. HR eventually denied the complaint. *Id.* Desrochers was transferred from the Homicide Unit to the Robbery Unit, which he characterized as a demotion, and Lowes had become the subject of an internal affairs investigation based on an arrest he had made, resulting in a two-week suspension. *Id.* at 704.

Desrochers and Lowes filed suit for, *inter alia*, First Amendment retaliation under § 1983, but the district court granted summary judgment to the defendants because the speech at issue did not address matters of public concern. *Id.* 708. The Ninth Circuit noted that analysis of a First Amendment retaliation claim consists of:

>a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Id.* at 708–09 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). The district court had ended its inquiry at the first step. *Id.* at 709. The court noted that "the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest," which is a question of law upon which a plaintiff bears the burden. *Id.* (citations omitted). The line is between "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" on the one hand, *see id.* at 710 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)), and "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies'" on the other, *see id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*, 705 F.2d at 1114)). The court rejected the plaintiffs' attempt to characterize their concerns about their supervisors' competence and the morale of the police force as issues of public concern as opposed to internal power struggles. *See id.* 710–11. The court used the following example:

>[W]hat if we judges prohibited our law clerks from taking coffee breaks? Suppose they responded with a memorandum complaining about the action. While they might assert—perhaps fairly—that caffeine deprivation would adversely affect their performance, morale, efficiency, and thus, their competency, no one would seriously contend that such speech addressed a matter of public concern.

*Id.* at 711. The Court made several further points. First, it is the content of the speech that matters, not a plaintiff's "post hoc characterizations" of the grievance. *Id.* Second, conclusory allegations of the "negative" effects of a supervisor's behavior are insufficient; a plaintiff must allege concrete negative results. *Id.* at 712–13. Third, the Court noted that Desrochers's claim that his speech was an issue of public concern was seriously undermined by the fact his grievance

was purely internal. *Id.* at 714–15.  The court concluded by stating that "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Id.* at 718 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)).  In other words, griping about work conditions to coworkers or supervisors, without more, is not protected by the First Amendment such that retaliation therefor can support a § 1983 claim. *See id.*  By contrast, where an employee's speech is in the form of trial testimony, for example, the employee is protected from retaliation. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011) (distinguishing *Desrochers*).

      Here, Plaintiff's "speech on matters of public concern" was largely internal, but it was also partially external.  The record from the Hearing Officer at the Nevada State Personnel Commission shows that Defendant Rich Harvey, one of Plaintiff's supervisors, indicates that Harvey directly told Plaintiff that "Part of [the reason for your administrative leave] is because what you've been communicating to the county commissioners is negative about your employer. Pissed your employer off." (Pl.'s Opp'n, Ex. 1, ECF No. 79-1).  This evidence is sufficient to prevent summary judgment on the third through fifth prongs of the retaliation test.  Whether or not the Hearing Officer's findings or conclusions are res judicata—the Hearing Officer concluded that the actual reason for Plaintiff's termination was his dealings with the Elko County Commissioners—the Court finds the evidence relevant.

      The "facilitation" of the meeting with the Elko County Commissioner can fairly be considered an external complaint about operations.  And Plaintiff apparently had additional communications with one or more Commissioners, because Defendant Harvey admitted basing his decision to punish Plaintiff upon such communications.  At a minimum, Harvey acted based upon this belief, which is sufficient for the purposes of a retaliation claim.

      Plaintiff's speech was therefore not purely internal.  Plaintiff's speech, which was in part external to his office, i.e., to one or more Elko County Commissioners, was also made at least in

1  part as a private citizen. It is clear that Defendant Harvey acted vindictively and apparently

2  illegally (under state employment law) in plotting to destroy Plaintiff's professional reputation

3  through intentionally false evaluations in retaliation for Plaintiff's communication with the Elko

4  County Commission. The Court finds that *Garcetti* and *Desrochers* do not put this case outside

5  the realm of constitutional violations.

## CONCLUSION

7  IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 55) is

8  DENIED.

9  IT IS FURTHER ORDERED that the Motion to Seal (ECF No. 56) is GRANTED.

10  IT IS SO ORDERED.

11  Dated this 7th day of January, 2013.

_____
ROBERT C. JONES
United States District Judge